UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 07-68-GWU


TAMMY L. CLARK,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.


**INTRODUCTION**

Tammy Clark brought this action to obtain judicial review of an unfavorable

administrative decision on her applications for Disability Insurance Benefits and for

Supplemental Security Income.  The case is before the Court on cross-motions for

summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to

1

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d
241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work.
Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to
make out a prima facie case by proving that he or she is unable to return to work.
Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th
Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide
that an individual with only off-and-on work experience is considered to have had
no work experience at all.  Thus, jobs held for only a brief tenure may not form the
basis of the Commissioner's decision that the plaintiff has not made out its case.
Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly
prove that there is work in the national economy which the plaintiff can perform,
then an award of benefits may, under certain circumstances, be had.  E.g., Faucher
v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the
ways for the Commissioner to perform this task is through the use of the medical
vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2
and analyze factors such as residual functional capacity, age, education and work
experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Clark, a 31 year-old former hair dresser with a high school education, suffered from impairments related to migraine headaches, discogenic and degenerative disorders of the spine, post-traumatic stress disorder, and depression.  (Tr. 20, 24).  While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 25-26).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 29).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 27-28).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence.  The ALJ erred in evaluating Clark's mental impairment.  However, the current record also does not mandate an immediate award of Social Security Benefits.  Therefore, the Court

must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

The only mental restrictions found by the ALJ were a "limited but satisfactory" ability to deal with the public, interact with supervisors, deal with work stresses, and maintain attention and concentration.  (Tr. 28).  When these restrictions were presented to Vocational Expert James Flynn, along with a number of physical restrictions, he indicated that jobs would be available.  (Tr. 798-799).  The ALJ relied upon this information to support the administrative decision.

Review of the evidence of record suggests more severe mental limitations than those found by the ALJ.  Dr. Robina Bokhari, Clark's treating psychiatrist, diagnosed post-traumatic stress disorder (PTSD).  (Tr. 514).  Dr. Bokhari completed a Mental Residual Functional Capacity Assessment Form upon which she noted an "extreme" restriction in completing a normal workday and workweek without interruption from psychologically-based symptoms, accepting instructions and responding appropriately to criticism from supervisors, and tolerating the ordinary stresses associated with daily work activity.[1]  (Tr. 516).  The doctor indicated a "marked" restriction in such areas as remembering work-like procedures, maintaining attention and concentration, maintaining regular attendance and being

_____

[1]"Extreme" was defined on the document as "an impairment of ability to function at a level that is likely to preclude consistent, reliable, and appropriate functioning for extended periods, or totally."  (Tr. 515).

8

punctual, sustaining ordinary routine without special supervision, working in coordination with others without being distracted by them, performing routine tasks at a consistent and appropriate pace, and getting along with co-workers.[2] (Tr. 515-516). The plaintiff was noted to have a "moderate" impairment in such areas as understanding, remembering and carrying out short and simple instructions, making simple work-related decisions, and responding appropriately to changes in a routine work setting.[3] (Tr. 515-516). Such severe restrictions would preclude all work activity.

The ALJ rejected Dr. Bokhari's opinion as binding because he did not believe that it was well-supported by objective medical data. (Tr. 23-24). The ALJ also criticized the claimant for her sporadic pursuit of mental health treatment. (Tr. 23). However, the Sixth Circuit Court of Appeals has stated that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989). The ALJ noted that, at the same time the doctor was assessing Clark with disabling mental restrictions, she rated her Global Assessment of Functioning (GAF) at 50 to 60. (Id.). Such a GAF suggested a condition approaching a "moderate"

---

[2]"Marked" was defined as "an impairment that seriously interferes with the ability to function in a consistent, reliable and appropriate manner in the workplace." (Tr. 515).

[3]"Moderate" was defined as "an impairment that significantly affects the ability to function in a consistent, reliable and appropriate manner in the workplace." (Tr. 515).

level of impairment and was inconsistent with the very severe findings on the assessment form.[4]  (Tr. 23-24).  Still, a GAF rating of 50 would suggest "serious" psychological impairment and was noted by the physician on several occasions.  (Tr. 519-521, 524).  Significantly, Dr. Bokhari was the only treating or examining mental health professional to examine the plaintiff and address the issue of work-related limitations.

The record was reviewed by Psychologists Ilze Sillers (Tr. 562-563) and Stephen Scher (Tr. 592-593), each of whom opined that Clark would be "moderately limited" in such areas as maintaining attention and concentration for extended time periods, interacting appropriately with the general public, and setting realistic goals or making plans independently of others.  The ALJ's findings were essentially consistent with these opinions.  An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for his differing opinion.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  Furthermore, Social Security Ruling 96-6p suggests that when the examiner is also a treating source, then the non-examiner needs to have reviewed a complete record including a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the treating physician.  In the present action, Sillers noted the

---

[4]This would be according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.

plaintiff's diagnosis of PTSD, but did not offer specific reasons why her opinion differed from that of Dr. Bokhari.  (Tr. 566).  Scher also did not provide specific reasons but stated that the newly admitted evidence did not support a change in the initial assessment.  (Tr. 594).  Neither of the reviewers, who saw the record in November of 2004 and February of 2005, saw a complete record since treatment notes from Dr. Bokhari were submitted into evidence from as late as October, 2005. (Tr. 676-677).  Furthermore, the reviewers did not see a report from another examining mental health specialist who provided more detailed and comprehensive information than that available to the treating physician.  Therefore, a remand of the action for further consideration is required.

Clark also argues that the ALJ erred in evaluating her pain complaints. Among the factors cited by the ALJ for discounting the claimant's credibility was the fact her insurance carrier had declined to pay for a surgical intervention to implant a motor cortex stimulator in order to alleviate her headache pain which had been recommended by Dr. El-Naggar.  (Tr. 25).  However, the fact that such a drastic measure was being considered provides at least some support to buttress the plaintiff's claim.  Therefore, upon remand, the ALJ should carefully consider the credibility issue.

Clark also asserts that the ALJ erred in rejecting the opinion of Dr. Howard Lynd, a treating physician who identified a number of extremely severe physical limitations.  (Tr. 530-532).  The ALJ cited a number of reasons for rejecting this

11

07-68  Clark

opinion.  (Tr. 22-23).  Among these reasons was the finding by Dr. Magdy El-Kalliny, the plaintiff's treating surgeon, that the plaintiff could return to work without restrictions in July of 2004 and that the doctor could find no "structural cause" for the patient's complaints.  (Tr. 414).  Dr. El-Kalliny was a treating source whose opinion would offset that of Dr. Lynd.  Dr. Amr El-Naggar, another treating source who in November, 2005 raised the possibility that the claimant might need additional surgery, did not impose any functional limitations.  (Tr. 693-698, 725-726).  The record was reviewed by Dr. James Ross (Tr. 582-591) and Dr. David Swan (Tr. 611-619), and the ALJ's physical findings were consistent with these limitations. Therefore, based on the <u>current</u> record, the Court finds no error.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the Court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 30th day of January, 2008.



Signed By:

_G. Wix Unthank_

United States Senior Judge

12